UNITED STATES DISTRICT COURT
EASTERN DISTRICT of TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10-CR-4 |
| | ) | |
| JARROD BLAIR | ) | Judge Collier |
| | ) | Magistrate Judge Carter |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Jarrod Blair's Motion to Suppress evidence found in the vehicle in which he was a passenger and on his person (Doc. 9) is before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). The Defendant moves to suppress all evidence which includes $5,000.00 and a loaded handgun, found in his vehicle in the traffic stop. He asserts the police had no probable cause to search the vehicle. The Defendant also moves under the Fourth Amendment to suppress two (2) grams of marijuana found during a search of his person. He alleges the officers had no probable cause to arrest him therefore they had no probable cause to search him. For the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress be DENIED.

II. Relevant Facts

At the June 24, 2010, suppression hearing, three Tenth Judicial Task Force officers testified: Officer Brian Epperson, Agent Mike Patterson, and Agent Matt Bales. I found them to

be credible witnesses.

*Officer Brian Epperson*

Officer Brian Epperson was on duty August 11, 2009 as an officer for the Tenth Judicial Drug Task Force (Task Force) where he worked part time along with his duties as a Deputy with the McMinn County Sheriff's Office. That evening Officer Epperson noticed a beige Hyundai Sonata driving South on Interstate 75 with its headlights off. As this was a violation of Tennessee law, Officer Epperson pulled out of the median and followed the Sonata with the intention of notifying the driver about the headlights. Officer Epperson followed the vehicle for several miles and ran a check on the vehicle's tag. He was informed by the dispatcher that the tag on the Sonata was actually registered to a 2007 Ford. At this point, Officer Epperson suspected the Sonata might be stolen and pulled it over.

After stopping the Sonata, Officer Epperson approached the vehicle on the passenger side where the Defendant was sitting. Officer Epperson advised the driver he originally pulled out and followed the vehicle for the headlight violation, but pulled the vehicle over because of the tag violation. He explained to the driver and passenger that the tag was registered to a Ford through Enterprise Rental. He asked for the paperwork for the vehicle and the rental contract along with licenses for the two occupants. The Driver, Pamela Griffin, had a valid driver's license but the passenger (Defendant) did not have any identification. At that point, Officer Epperson asked the Defendant to step out of the vehicle.

When the window was first rolled down, Officer Epperson had noticed a strong smell of marijuana. He also observed marijuana residue on the Defendant's shirt. Officer Epperson also noticed the Defendant was nervous and breathing heavily when he was asked to step out of the

vehicle. For his own safety, Officer Epperson handcuffed the Defendant and told him he was being handcuffed simply for officer's safety. The Defendant was not under arrest at that time and Officer Epperson told him so more than once. Epperson asked if there were any drugs or weapons on the Defendant or in the car and the Defendant said "no ." Then Officer Epperson asked Ms. Griffin to step out of the vehicle and he explained he had pulled her over for the tag violation, but now the problem was the smell of marijuana. He requested permission to search the vehicle. Ms. Griffin denied Officer Epperson permission to search. Epperson decided to wait for a drug dog before searching the vehicle. He explained to Ms. Griffin that he did have probable cause to search her vehicle but was going to wait for a drug dog before doing so. At this point, the Sonata had been pulled over for approximately five minutes. The Defendant was being detained for Officer Epperson's safety and the driver was sitting on the hood of her car. Officer Epperson then attempted to contact Enterprise Rental to clear up the issues with the tag and confirm the vehicle was not stolen.

*Agent Mike Patterson*

Approximately twelve minutes after stopping the Sonata, Agent Mike Patterson arrived with his drug dog and began a free air sweep of the car. Agent Patterson testified he is a certified canine handler with three years of experience working with the Task Force. Agent Patterson's canine, Payton, is a border collie who is certified and trained by the NNDDA. This certification is renewed every year.

*Agent Matt Bales*

Agent Matt Bales arrived on the scene at approximately twelve minutes after the initial stop. Agent Bales was the shift supervisor on the day of the stop and has six years of experience

3

working with the Task Force.

While Agent Bales and Officer Epperson questioned Ms. Griffin and the Defendant, Agent Patterson performed a free air sweep of the vehicle with his drug dog. The free air sweep involves allowing the drug dog to sniff around the car for the smell of certain narcotics, which if present causes the dog to alert to the odor by sitting at the location. Approximately thirty seconds into the free air sweep the drug dog alerted at the passenger side door.

While the drug dog was performing the search of the car, Officer Epperson and Agent Bales questioned the driver and the Defendant. During this time, the Defendant was searched by Agent Bales. Approximately two (2) grams of marijuana was found on the Defendant. After the marijuana was found and thirteen minutes after the vehicle had been stopped, Agent Patterson began the search of the vehicle. The first item searched was Ms. Griffin's purse in which approximately $1,000.00 was found by Agent Bales. Ms. Griffin stated it was her money and it was placed back in the purse. Shortly after the money was found, Agent Patterson found a loaded and chambered handgun underneath the passenger seat. At this point, Agent Bales motioned to Officer Epperson to place Ms. Griffin in handcuffs as well.

When the handgun was found, the vehicle in which the Defendant and Ms. Griffin had been driving had been pulled over for approximately fourteen minutes. The Defendant made a statement that the gun was his and there was no reason for Ms. Griffin to be arrested. Both Officer Epperson and Agent Bales testified the Defendant's statement was voluntary and not a response to any direct questions. Shortly after the gun was found, Officer Epperson read Ms. Griffin her *Miranda* warnings. Shortly afterwards and approximately fifteen minutes after the vehicle was first pulled over, the Defendant was also read his *Miranda* warnings. After

Mirandizing the Defendant, Officer Epperson began asking the Defendant a series of questions which the Defendant freely answered. After being asked if there were any more drugs, weapons, or large amounts of cash in the vehicle, the Defendant answered affirmatively that there was $5,000.00 in the trunk of the vehicle. This money was found broken down in five bundles of one thousand dollars. Next, the Defendant responded he was a convicted felon who had just been released from jail after serving a sentence on cocaine related charges but was not on probation at the time.

The Defendant was taken to Bradley County Jail. Ms. Griffin was released and allowed to leave in the Hyundai Sonata. None of the cash discovered in her purse was seized.

### III. Law and Argument

*The Search of the Hyundai Sonata*

The Defendant alleges the traffic stop that took place on Interstate 75 was baseless because there was no reason for a stop. Therefore, all evidence found following the stop should be suppressed. I disagree. Officer Brian Epperson testified that the Defendant's vehicle was driving at dusk without having its headlights turned on, which is a violation of Tennessee Law, and this was the initial cause for his following the vehicle. However, after following for a few miles and checking the vehicle's tag, he was notified the tag was not registered to the vehicle. In Tennessee it is illegal to operate a motor vehicle with a tag registered to another vehicle. (*See* Tennessee Code Annotated § 55-4-110). Thus, there was a legal basis for the vehicle to be stopped by Officer Epperson.

The standard for reviewing the constitutionality of the traffic stop in the instant case is succinctly and accurately stated in *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2002):

5

Police officers may briefly stop an individual for investigation if they have reasonable suspicion that the person has committed a crime. *Houston v. Clark County Sheriff Deputy John Does 1-5,* 174 F.3d 809, 813 (6th Cir.1999). An ordinary traffic stop is more "akin to an investigative detention rather than a custodial arrest." *United States v. Hill,* 195 F.3d at 264, *cert. denied,* 528 U.S. 1176 (2000). Reasonable suspicion is "more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Houston,* 174 F.3d at 813 (alterations in original) (internal quotations and citation omitted). It requires " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' an investigatory stop." *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 21 (1968)). Moreover, reasonable suspicion "can arise from evidence that is less reliable than what might be required to show probable cause." *Id.*

The existence of reasonable suspicion must be viewed in the "totality of the circumstances." *United States v. Erwin,* 155 F.3d at 822 ( en banc ), *cert denied,* 525 U.S. 1123 (1999). This means that a court "must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Smith,* 263 F.3d at 588. Moreover, it is well-settled that the legality of a traffic stop is not dependent upon an officer's subjective intentions. *Whren v. United States,* 517 U.S. 806, 813 (1996).

When police detain a vehicle based on a civil infraction, probable cause is required, but when police detain a vehicle based on a criminal violation, only reasonable suspicion is required. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Officer Epperson initially saw the vehicle had failed to activate its headlights at dusk which violates Tenn. Code Ann. § 55-9-401. Next, Epperson ascertained that the vehicle was violating Tenn. Code Ann. § 55-4-110 by driving with a different tag than the one registered to the vehicle. (*See* Government Exhibit 1 and Defense Exhibit 1). Therefore, there was probable cause for Officer Epperson to make a valid traffic stop.

Once Officer Epperson made the stop and approached the vehicle, he made contact with the occupants of the vehicle to notify them that the car they were driving did not have the proper

6

vehicle tag. Upon making contact, Epperson immediately smelled the odor of marijuana and saw residue of marijuana on the Defendant himself. This gave Epperson probable cause to conduct a search of the vehicle. However, Officer Epperson waited for the drug dog to arrive, which gave a positive alert and provided Officer Epperson with additional probable cause to search.

It is well settled that when police have conducted a warrantless search, the government bears the burden of proof to show the search was justified under the Fourth Amendment. *United States v. Haynes*, 301 F.3d 669, 676 (6th Cir. 2002). The police may lawfully detain a vehicle where there is probable cause to believe a traffic violation has occurred. *United States v. Freeman*, 209 F.3d 464, 465 (6th Cir. 2000); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000); *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996). Because it is a violation of Tennessee state law to drive a vehicle with another vehicle's tag, the traffic stop, initially, was justified.

Officer Epperson testified that when he approached the defendant's vehicle, he smelled the strong odor of burnt marijuana emanating from the vehicle. It is firmly established in the Sixth Circuit that a marijuana odor emanating from a vehicle supplies probable cause to law enforcement officers to search the entire vehicle – even the trunk – and any containers within that vehicle which could be hiding marijuana. *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) ("we find that Agent Perman's smelling the marijuana [in the truck] then constituted probable cause to believe there was marijuana in the vehicle"); *United States v. $118,170.00 in U.S. Currency*, 69 Fed. Appx. 714, 716 (6th Cir. Jul. 9, 2003) (unpublished) ("The smell of marijuana alone constitutes probable cause to believe that drugs are in the vehicle and will justify searching without a warrant."); *United States v. Jackson*, 63 Fed. Appx. 839, 842 (6th Cir. Apr.

25, 2003) (unpublished) ("We conclude that during a reasonable stop of the car, the two police officers smelled marijuana coming from the car's interior, and that this discovery provided probable cause to search the automobile."); *cert. denied*, 540 U.S. 910 and 540 U.S. 916 (2003); *United States v. Littleton*, 15 Fed.Appx. 189, 193 (6th Cir. Jun. 4, 2001) (unpublished) ("As a matter of law, the district court correctly concluded that the odor of marijuana can constitute probable cause for a warrantless search [of a vehicle]"); *United States v. Atkins*, 1999 WL 1045942 **2 (6th Cir. Nov. 8, 1999) (strong smell of marijuana coming from car after valid stop for speeding gave officers probable cause to search vehicle for marijuana); *United States v. Gonzalez*, 69 F.3d 538, *3 (6th Cir. Oct. 24, 1995) (Table) ("Once Officer Kellerhall smelled the odor of marijuana coming from the motor home, he had probable cause to search that vehicle."); *United States v. Carrera*, 1992 WL 116006 **2 (6th Cir. May 29, 1992) ("The smell of marijuana emanating from [the] vehicle gave the officer probable cause to search the vehicle, including the trunk."). *See also, United States v. Burns,* 298 F.3d 523, 542 (6th Cir. 2002) ("An officer may conduct a warrantless search of every part of a legitimately stopped vehicle, including the trunk and all containers, if there is probable cause to believe that the vehicle contains contraband."), *cert. denied,* 538 U.S. 953 (2003); *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991) (holding that where officers had probable cause to believe vehicle contained contraband, officers could search entire vehicle, including trunk, and any containers therein which could conceal the contraband); *United States v. Borne*, 2005 WL 2290273, *13 (E.D. Tenn. Sept. 20, 2005) (same).

    Defendant argues that there was insufficient probable cause to search the vehicle. According to the defendant, the odor of burnt marijuana is insufficient to support probable cause

8

to search the vehicle because burnt marijuana means the marijuana has been smoked and, accordingly, the officers have no reasonable basis to believe there might be more in the vehicle. I must disagree. I find marijuana that has been smoked in the car so recently as to cause a strong odor to emanate from the car provides a sufficient basis to conclude there is a fair probability that more contraband will be found in the vehicle. *See United States v Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (probable cause exists when there is a "fair probability" that fruits of a criminal activity will be located within the premises to be searched.) The Sixth Circuit has also directly addressed this issue and held, raw or burnt, the odor of marijuana coming from a vehicle supplies probable cause to search that vehicle:

> As regards the different descriptions of the smell of the marijuana, this conflict stems from comparing testimony provided by [Officer] Baker at the suppression hearing with testimony given by [Officer] Higgins at the trial. At the suppression hearing [Officer] Higgins testified to smelling marijuana, without specifying whether it was fresh or burnt. Even if we were to consider the trial testimony, we do not see any significant conflict that would alter the outcome, for in any event, marijuana was detected as emanating from Foster's car and was ultimately discovered in it. Whether it was burnt or fresh-smelling marijuana does not change this.

*United States v. Foster,* 376 F.3d 577, 583 -584 (6th Cir.), *cert. denied*, 543 U.S. 1012 (2004).

*The Search of the Defendant*

The Defendant alleges that his Fourth Amendment rights were violated because there was no reason for the arrest and thus no reason for him to be searched. Defendant moves to suppress all evidence obtained from the search of his person.

The Defendant was initially detained by Officer Epperson for his own safety and was not under arrest. When Officer Bales arrived, he spoke with Officer Epperson who told him about the stop. There was an odor of burnt marijuana coming from the vehicle. Epperson told Officer

9

Bales about seeing marijuana residue on Defendant's shirt. Officer Bales himself saw the marijuana residue. Officer Bales conducted a search and recovered a marijuana cigarette and a small bag of marijuana from the Defendant's person. I conclude the Defendant was effectively under arrest for possession of marijuana based on the visible residue on his person and the odor from the vehicle. As the government argues, possession of any amount of marijuana is an arrestable offense in the State of Tennessee. Further, when the loaded and chambered handgun was found, the Defendant was read his *Miranda* warnings and placed under arrest for that offense. Even if one were to argue the defendant was not under arrest on the marijuana charge, once the handgun was found, it was inevitable the drugs would have been found incident to the arrest on the gun charge. I therefore conclude the search was made incident to arrest and is therefore legal. All evidence obtained is admissible.

The facts of this case indicate the search of the defendant's person was incident to a lawful arrest and, thus, reasonable under the Fourth Amendment. The Fourth Amendment provides, in part, that "the right of the people to be secure in their persons, houses, papers effects, against unreasonable searches and seizures, shall not be violated." U.S.C.A. Const. Amend. 4. Except in certain carefully defined classes of cases, a search of private property is unreasonable unless it has been authorized by a valid search warrant. Searches incident to arrest are a well established exception to the warrant requirement of the Fourth Amendment. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979); *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Chimel v. California*, 395 U.S. 752, 762-63 (1969). Under this exception, validity of arrests must be established as the condition precedent to a lawful search incident thereto. As to the validity of warrantless arrests, there must be probable cause to believe a felony is being or has

been committed by the arrested individual, based upon "the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *United States v. Watson*, 423 U.S. 411 (1976) (warrantless arrest permitted if officer has probable cause to believe felony has been committed, even if committed outside officer's presence). Probable cause has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995). Officer Epperson initially smelled marijuana on the Defendant and saw marijuana residue on his shirt. A short while later a loaded and chambered handgun was found in the vehicle in which he was a passenger. Based upon this, I conclude that there was ample probable cause to arrest the Defendant.

Assuming there is probable cause to arrest, the police may make a full search of suspect for both weapons and evidence as a search incident to arrest. *Robinson*, 414 U.S. at 229; *United States v. Hughes*, 898 F.2d 63, 64 (6th Cir. 1990) (upholding seizure of crack cocaine from match box in defendant's hand as valid search incident to arrest).

IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that the defendant's motion to suppress evidence found in the Hyundai Sonata on Interstate 75 and on the Defendant's person (Doc. 9) be DENIED.[1]

SO ORDERED.

ENTER:

Dated: July 13, 2010          s/William B. Mitchell Carter
                              UNITED STATES MAGISTRATE JUDGE

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).